UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                      :

UNITED STATES OF AMERICA           :
                                                      :

                                                      :                 24 Crim. 427 (LGS)
             -against-               :
                                                       :                 **OPINION & ORDER**

SUE MI TERRY,                          :
                                 Defendant.   :
                                                       :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

        Defendant Sue Mi Terry was indicted on July 15, 2024, and charged with one count of

conspiracy to violate the Foreign Agents Registration Act ("FARA") and one count of failure to

register under FARA. Defendant moves to dismiss the Indictment. Defendant's motion is

denied.

        The Reporters Committee for Freedom of the Press ("Reporters Committee") and,

together, the Knight First Amendment Institute at Columbia University ("Knight Institute") and

American Civil Liberties Union ("ACLU") moved to submit memoranda of law as amici curiae

in support of the motion to dismiss. These motions are granted. "District courts have broad

discretion to permit or deny the appearance of an amici curiae in a case."[1] *Petersen Energía*

*Inversora, S.A.U. v. Argentine Republic*, No. 15 Civ. 2739, 2022 WL 3536117, at *1 (S.D.N.Y.

Aug. 18, 2022). Although Defendant's motion to dismiss the Indictment is denied, amici's

memoranda were helpful, and their arguments were considered as noted below. The

Government's request to file a supplemental brief responding to amici is denied as moot and

unnecessary since Defendant's motion to dismiss is denied.

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and
citations are omitted, and all alterations are adopted.

I.    **BACKGROUND**

The following facts are taken from the allegations in the Indictment and assumed to be true for purposes of Defendant's motion to dismiss.  *See United States v. Benjamin*, 95 F.4th 60, 64 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 982 (2024).

Count One charges Defendant with conspiring with others "to knowingly and willfully act as an agent of . . . the Government of the Republic of Korea, without registering with the Attorney General, as required by" FARA.  Count Two charges Defendant with "knowingly and willfully act[ing] and caus[ing] others to act as an agent of . . . the Government of the Republic of Korea, without registering with the Attorney General, as required by" FARA.

From approximately 2001 to 2011, Defendant served in several positions in the United States Government, including as an analyst on East Asian issues for the Central Intelligence Agency ("CIA").  After leaving government service, Defendant worked at academic institutions and think tanks in New York City and Washington, DC, between 2013 and 2023.  Defendant also "made media appearances, published articles, hosted conferences, and testified before Congress as a policy expert specializing in . . . South Korea, North Korea, and various broader regional issues impacting Asia."

The Indictment alleges that, between 2013 and 2023, Defendant "worked as an agent of the Government of the Republic of Korea ("ROK"), also known as South Korea."  According to the Indictment, Defendant met with three ROK National Intelligence Service ("NIS") officers during that time.  The NIS is "the primary intelligence agency for the ROK."  The Indictment alleges that Defendant "met with [the ROK NIS officers] on multiple occasions," and that the NIS officers "requested that [Defendant] take specific actions for the benefit of the ROK NIS."  Those services included sharing notes from an "off-the-record group meeting with the U.S.

2

Secretary of State regarding the U.S. Government's policy towards North Korea," organizing an event for an NIS officer to "mingl[e] with Congressional staff without disclosing that he was a ROK intelligence officer," attempting to arrange and arranging meetings between ROK officials and United States government officials and publicly espousing talking points provided by the NIS officers.  During that time, the NIS officers gave Defendant luxury clothing, handbags and expensive meals and provided funding for the think tank where she worked.  The Indictment also alleges that, on several occasions, Defendant wrote articles at the request of representatives of the ROK Ministry of Foreign Affairs ("MFA").

According to the Indictment, Defendant's activity on behalf of the ROK required her to register with the Attorney General as a "foreign agent" under FARA.  The Indictment alleges that Defendant was "reminded of FARA reporting requirements on multiple occasions in explicit connection with certain of the activities detailed" in the Indictment, including when she testified before Congress.  In or about November 2022, Defendant also "received training on FARA in connection with her employment."  Defendant has never registered as a foreign agent.  On July 15, 2024, Defendant was indicted and charged with conspiracy to violate FARA and failure to register under FARA.

## II.    LEGAL STANDARD

### A.  Motion to Dismiss

Under Federal Rule of Criminal Procedure 7(c)(1), an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." "[A]n indictment is sufficient if it (1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend and (2) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *Benjamin*, 95 F.4th at

66.  "[A]t the indictment stage, [courts] do not evaluate the adequacy of the facts to satisfy the elements of the charged offense."  *United States v. Dawkins*, 999 F.3d 767, 780 (2d Cir. 2021); *United States v. Barrett*, No. 23 Crim. 623, 2025 WL 371084, at *13 (S.D.N.Y. Feb. 3, 2025).  The Second Circuit has held that an indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Benjamin*, 95 F.4th at 66-67.  "An indictment need not be perfect, and common sense and reason are more important than technicalities."  *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013).  "The dismissal of an indictment is an extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights."  *Benjamin*, 95 F.4th at 66.

## B.  Foreign Agents Registration Act

FARA states that "[n]o person shall act as an agent of a foreign principal unless he has filed with the Attorney General a true and complete registration statement" and supplemental material.  22 U.S.C. § 612(a).  An "agent of a foreign principal" is defined as "any person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal" and "who directly or through any other person" engages in specified conduct in the interests of that foreign principal.  *Id.* § 611(c)(1).

That specified conduct, as potentially relevant here, includes (1) "engag[ing] within the United States in political activities for or in the interests of such foreign principal" and (2) "act[ing] within the United States as a public relations counsel, publicity agent, information-service employee or political consultant for or in the interests of such foreign principal."  *Id.* § 611(c)(i)-(ii).

4

FARA further defines the above terms, including:

- "'political activities' means any activity that the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States" regarding the United States' "domestic or foreign policies," "or with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party," *id.* § 611(o);

- "'public-relations counsel' includes any person who engages directly or indirectly in informing, advising, or in any way representing a principal in any public relations matter pertaining to political or public interests, policies, or relations of such principal," *id.* § 611(g);

- "'publicity agent' includes any person who engages directly or indirectly in the publication or dissemination of oral, visual, graphic, written, or pictorial information or matter of any kind, including publication by means of advertising, books, periodicals, newspapers, lectures, broadcasts, motion pictures, or otherwise," *id.* § 611(h);

- "'political consultant' means any person who engages in informing or advising any other person with reference to the domestic or foreign policies of the United States or the political or public interest, policies, or relations of a foreign country or of a foreign political party," *id.* § 611(p).

A foreign agent is not required to register under FARA if the agent is "engaging or agreeing to engage only (1) in private and nonpolitical activities in furtherance of the bona fide trade or commerce of such foreign principal" or "(2) in other activities not serving predominantly

a foreign interest." *Id.* § 613(d).

The Government may bring a civil action requesting "an order enjoining" an individual in violation of FARA from "continuing to act as an agent of [a] foreign principal, or for an order requiring compliance with" FARA. *Id.* § 618(f). The Government also may pursue criminal charges against an individual who "willfully violates" FARA. *Id.* § 618(a)(1).

## III.    DISCUSSION

Defendant seeks dismissal of the Indictment on the grounds that the Indictment fails to plead the charged offenses, that criminal enforcement of FARA is unconstitutional on its face and as applied to the facts of this case, and that the Indictment is impermissibly duplicitous. For the reasons below, Defendant's motion is denied.

### A.  Sufficiency of the Indictment

Defendant argues that the Indictment fails to allege facts sufficient to establish that she had a registration obligation under FARA or that any violation of FARA was willful. Defendant also argues that the Indictment fails to allege the crime of conspiracy. These arguments lack merit because the Indictment sufficiently alleges the charged offenses.

#### 1.  FARA - Registration Obligation

Defendant seeks dismissal on the ground that the Indictment does not allege facts that would require Defendant to register as an agent of a foreign principal and therefore does not allege a violation of FARA. This argument fails because the Indictment tracks the language of the relevant portion of FARA and provides narrative detail of the alleged offense conduct. This argument also fails as to the specific factual allegations in the Indictment. Defendant's arguments otherwise are premature challenges to the sufficiency of the Government's evidence, all as explained below.

### a. Duty to Register

The Indictment sufficiently alleges that Defendant had a duty to register as a foreign agent under FARA.  The Indictment tracks the language of the statute, stating that FARA requires registration "if he or she is engaging, directly or through another person, in certain types of conduct, such as political activities, political consulting, public relations, or publicity activities, for or in the interest of the foreign principal."  The Indictment also describes Defendant's offense conduct -- specifically, that she (1) "advocated ROK policy positions, including in published articles and during media appearances," (2) "disclosed nonpublic U.S. Government information to ROK intelligence officers" and (3) "facilitated access for ROK Government officials to U.S. Government officials," all "at the direction" of ROK officials and without registering under FARA.  The thirty-one-page Indictment then details this conduct, which is also summarized in list form, including the time and place of the alleged acts, under the heading "Overt Acts" in the conspiracy charge.  These allegations are sufficient to plead that Defendant had a duty to register under FARA.  *See Dawkins*, 999 F.3d at 779-80 (stating that the "speaking indictment" provided "more than enough background to inform the defendants of when and where the offense conduct took place"); *Benjamin*, 95 F.4th at 66-67 (stating that an indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime").

### b. Agency Relationship

Defendant argues that the Indictment's allegations that Defendant shared "nonpublic U.S. government information" with ROK officials, "facilitated access for ROK Government officials to U.S. government officials" and advocated certain policy positions at the request of ROK officials fail to establish a duty to register under FARA because the Indictment does not allege

that Defendant did so at those officials' "direction," "control," or "request."  22 U.S.C.

§ 611(c)(1) (defining "agent of a foreign principal").  Instead, she argues that she took these

actions of her own volition -- for instance, to cultivate her professional network or because she

sincerely held those policy positions.

This argument fails because it is a premature challenge to the sufficiency of the

Government's evidence.  A court may weigh the sufficiency of the Government's evidence as

alleged in an indictment only if "the government has made what can fairly be described as a full

proffer of the evidence it intends to present at trial."  *United States v. Wedd*, 993 F.3d 104, 121

(2d Cir. 2021).  The Government confirms, and Defendant concedes, that the Government has

not done so here.

The Indictment alleges that Defendant acted as an agent of a foreign principal and alleges

facts supporting an inference that she acted at that principal's request -- including, for example,

that ROK officials made gifts to Defendant and donations to the think tank where she worked,

that Defendant had contact with ROK officials over a decade-long period and that Defendant

took actions to influence U.S. officials and to share information about U.S. foreign policy after

being asked to do so by ROK officials.  In arguing that the Indictment must specifically allege

that each activity was taken at a foreign principal's "request," Defendant seeks prematurely to

challenge which inferences should be drawn from the alleged facts.  *Cf. Benjamin*, 95 F.4th at 74

(holding bribery indictment sufficient because existence of "explicit quid pro quo . . . could be

inferred from [defendant's and alleged briber's] words and actions").

Defendant also argues that the Indictment fails to meet the definition of "request" as

interpreted by the Second Circuit in *Att'y Gen. of the United States v. Irish N. Aid Comm.*, 668

F.2d 159, 161 (2d Cir. 1982) ("*INAC*").  Defendant asserts that, in *INAC*, the Second Circuit held

that a "request" is more than a mere "plea," and that the Indictment does not allege that ROK officials' conduct towards Defendant was stronger than a "plea."

This argument is unpersuasive because the Indictment contains factual allegations that could support an inference that Defendant acted pursuant to ROK officials' "request," as interpreted by *INAC*.  For instance, in *INAC*, the court stated that, in assessing whether a "request" exists, "it is important to ascertain whether those requested to act were identified with specificity by the principal." *Id.* at 161.  Here, the Indictment alleges that ROK officials communicated with Terry individually on multiple occasions regarding actions that Terry allegedly took on behalf of the ROK.  *INAC* further states, "[a]lso relevant is the specificity of the action requested." *Id.*  Here, the Indictment alleges that ROK officials requested specific actions, including that the Director of the NIS "wanted to have 'an intimate roundtable'" including former U.S. government officials, which Defendant then arranged, and that Defendant planned a happy hour for congressional staff funded by an NIS official.  Accordingly, Defendant's arguments that the Indictment does not adequately allege an agency relationship fail.

### c.  Agency Activities

Defendant argues that the allegations that she "facilitated access for ROK Government officials to U.S. Government officials" are insufficient because the Indictment does not identify, and consequently does not track the language of, the applicable subsections of the statutory definition of "agent."  Defendant asserts that the Indictment is required to plead specifically which of the specified agency activities listed in 22 U.S.C. § 611(c)(i)-(iv) apply to the allegations in the Indictment because the type of agency activity is an essential element of the charged offense.

This argument is misplaced because the Indictment does specify which type of agency activities apply to Defendant's conduct. The Indictment charges Defendant with acting as an agent of a foreign principal without registering in violation of FARA, and elsewhere states that FARA requires registration if a person acts as an "agent of a foreign principal" and "engag[es] . . . in certain types of conduct, such as political activities, political consulting, public relations, or publicity activities." This conduct corresponds to the categories in § 611(c) into which Defendant's alleged activities arguably fall. The list in the Indictment omits the types of conduct that seem to be irrelevant to Defendant -- collecting and disbursing money, and representing foreign interests before a U.S. agency or official. *See* 22 U.S.C. § 611(c)(1)(iii), (iv). The Indictment's identification of specific categories of agency conduct requiring registration, together with corresponding factual allegations about Defendant's own conduct, are sufficient to put Defendant on notice of at least those categories. *Cf. United States v. Pugh*, No. 15 Crim. 116, 2015 WL 9450598, at *12-13 (holding indictment alleging material support for terrorism adequate where indictment "specif[ies] the material support theory it pursues").

Defendant further argues that the Indictment includes allegations of mere "networking activities," which cannot be characterized as "political activities," one of several subcategories in the definition of "agent of a foreign principal" in § 611(c). This argument goes to the sufficiency of the evidence and not the sufficiency of the Indictment. As discussed, the Indictment sufficiently pleads that Defendant criminally violated FARA by tracking the language of the statute and providing notice of the charged conduct.

### d. FARA's Purpose

Defendant argues that her prosecution for allegedly acting as an agent of "one of the United States' closest democratic allies" is "flatly inconsistent with FARA's well-established purpose," which is to root out "malign foreign influence." This argument is unpersuasive because the text of FARA does not distinguish between agents of allies and adversaries of the United States. *See* 22 U.S.C. § 611(b)(1), (e) (defining "foreign principal" and "government of a foreign country" without reference to foreign country's relationship to United States); *Meese v. Keene*, 481 U.S. 465, 469-70 (1987) (stating in dictum that FARA's "registration requirement . . . appl[ies] equally to agents of friendly, neutral, and unfriendly governments"). The only exception, which Defendant does not invoke, is when the foreign principal is "a government of a foreign country the defense of which the President deems vital to the defense of the United States." 22 U.S.C. § 613(f).

### 2. FARA - Willfulness

Defendant argues that the Indictment fails to allege a "willful violation" of FARA. Dismissal on this ground is inappropriate because the charging language of the Indictment alleges that Defendant "knowingly and willfully acted . . . as an agent of a foreign principal . . . without registering with the Attorney General, as required by law." This language "track[s] the language of the statute charged" and, with the rest of the Indictment, provides sufficient information about the alleged violations to put Defendant on notice of the conduct alleged. *United States v. Bout*, 731 F.3d 233, 240-41 (2d Cir. 2013); *see United States v. Sun*, No. 24 Crim. 346, 2025 WL 1296456, at *3-4 (E.D.N.Y. May 5, 2025) (holding sufficient FARA count of indictment containing nearly identical charging language).

Defendant argues that the Indictment's specific factual allegations are insufficient to establish that she acted willfully -- alleging, for example, that she attended a FARA training and signed forms stating that she was not an active FARA registrant.  This argument fails because at the motion to dismiss stage, courts "do not evaluate the adequacy of the facts to satisfy the elements of the charged offense," including mens rea.  *Dawkins*, 999 F.3d at 780; *see United States v. Eisenberg*, No. 23 Crim. 10, 2023 WL 8720295, at *5 (S.D.N.Y. Dec. 18, 2023) (declining to dismiss indictment based in part on indictment's charging language that defendant "intended to" manipulate commodities market).

Defendant argues that a "heightened standard" of willfulness is required for FARA violations, analogizing to complex statutory schemes (such as the Internal Revenue Code) for which courts require a "voluntary, intentional violation of a known legal duty" as an element of criminal liability.  *United States v. Pirro*, 212 F.3d 86, 90 (2d Cir. 2010).  This argument is premature because the Indictment is sufficient in charging that Defendant "willfully" violated FARA without defining the applicable standard of "willfulness" or how Defendant's alleged conduct meets that standard.  *See United States v. Sampson*, 898 F.3d 278, 285 (2d Cir. 2018) (holding that district court erred in making finding regarding defendant's intent on motion to dismiss).

Contrary to Defendant's argument, *Pirro* does not require dismissal even if Defendant's "heightened standard" applies.  In *Pirro*, the Second Circuit affirmed dismissal of a portion of a charge that alleged that the defendant had violated tax laws by failing to disclose a different person's "ownership interest" in an S Corporation.  212 F.3d at 87, 89.  The applicable statutes and regulations provided only that the tax filing was required to identify "shareholders" of the S Corporation -- not "holders of unspecified ownership interests."  *Id.* at 90.  The Second Circuit

held that, in light of the statutes, regulations and caselaw applicable to S Corporations, any duty to report generalized ownership interests was not "knowable," and the indictment therefore necessarily failed to charge a violation of a "known legal duty," which is required for criminal tax liability. *Id.* at 91. That is distinguishable from the Indictment because the Indictment alleges that Defendant failed to comply with a legal duty that was both knowable and known to Defendant.

Defendant also argues that the Indictment fails to track the statutory language as to Defendant's willfulness. Specifically, Defendant argues that the Indictment charges that Defendant's willful misconduct was acting as an agent rather than failing to register as an agent. This argument fails because the Indictment charges that Defendant "knowingly and willfully acted . . . as an agent of a foreign principal . . . without registering with the Attorney General" -- i.e., that Defendant willfully acted as an agent without registering. That allegation is sufficient to charge a violation of FARA.

### 3. Conspiracy

Defendant moves to dismiss the FARA conspiracy charge because it fails to allege that Defendant's putative co-conspirators were aware of her alleged obligation to disclose her status as a foreign agent. This argument is unpersuasive because it amounts to a premature challenge to the sufficiency of the evidence of co-conspirator willfulness. *See Dawkins*, 999 F.3d at 780. "In an indictment for conspiring to commit an offense -- in which the conspiracy is the gist of the crime -- it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy." *Bout*, 731 F.3d at 240. The conspiracy charge is sufficient because it alleges that Defendant conspired with others to "knowingly and willfully act as an agent of a foreign principal without registering with the

Attorney General," and lists sixteen alleged overt acts taken in furtherance of that conspiracy. *See United States v. Blakstad*, No. 19 Crim. 486, 2021 WL 5233417, at *15 (S.D.N.Y. Nov. 9, 2021) (holding that conspiracy counts that "track the language of the statute charged" and "specify the overt acts committed in furtherance of the conspiracy . . . met and exceeded the standard of sufficiency"), *aff'd*, No. 21-2859, 2023 WL 2668477 (2d Cir. Mar. 29, 2023); *Sun*, 2025 WL 1296456, at *8 (declining to dismiss indictment although it did not specifically allege that foreign co-conspirators "willfully" violated FARA).

Defendant also argues that the conspiracy count fails to allege a criminal object because the alleged object of the charged conspiracy is "to knowingly and willfully act as an agent of a foreign principal without registering," but FARA criminalizes the willful failure to register. This argument fails because the conspiracy count describes the object of the conspiracy using the same language of the FARA count, which adequately alleges a criminal violation of FARA.

## B.  Constitutional Challenge

Defendant argues that criminal enforcement of FARA is unconstitutional both facially and as applied to the facts of this case. Specifically, Defendant argues that, for purposes of criminal enforcement, the statute is void for vagueness in violation of the Fifth Amendment's due process guarantee. Defendant's facial challenge fails; she cannot bring a facial challenge because the statute clearly applies to her own conduct as alleged in the Indictment. The facial challenge also fails on the merits. Defendant's as-applied challenge is deferred pending factual development at trial and renewal of the motion.

### 1.  Vagueness Legal Standard

A "statute is unconstitutionally vague if it fails to define the unlawful conduct with sufficient definiteness that ordinary people can understand what conduct is prohibited, or if its

vagueness makes the law unacceptably vulnerable to arbitrary enforcement." *United States v. Requena*, 980 F.3d 30, 39 (2d Cir. 2020); *accord United States v. Williams*, 553 U.S. 285, 304 (2008). A statute is unconstitutionally vague on its face if it is "so fatally indefinite that it cannot constitutionally be applied to anyone." *Requena*, 980 F.3d at 39. However, there are "circumstances in which a statute that is not necessarily vague in all applications may nonetheless be void for vagueness on its face," including "if the statute implicates rights protected by the First Amendment." *Id.* (citing *Parker v. Levy*, 417 U.S. 733, 759 (1974)).

Because a court is required, "if [it] can, to construe, not condemn, Congress' enactments," the vagueness analysis begins with the statutory text. *Skilling v. United States*, 561 U.S. 358, 403 (2010); *see United States v. Farhane*, 634 F.3d 127, 142 (2d Cir. 2011) ("The task of interpreting a statute necessarily begins with its language."). A statute is not vague where culpability rests on "clear questions of fact," as opposed to "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Williams*, 553 U.S. at 306; *accord Holder v. Humanitarian L. Project*, 561 U.S. 1, 21 (2010) (holding that statute is not vague where application "does not require . . . untethered, subjective judgments"). "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Copeland v. Vance*, 893 F.3d 101, 114 (2d Cir. 2018) (quoting *Williams*, 553 U.S. at 306).

### 2. Facial Challenge and First Amendment Activity

Defendant's facial challenge fails first because FARA does not sufficiently implicate First Amendment-protected activity to justify a facial challenge absent a showing that

15

Defendant's own conduct is not clearly covered.

Defendants generally cannot mount a vagueness challenge to a statute that clearly applies to their own conduct, but that requirement is "relaxed . . . in the First Amendment context." *Williams*, 553 U.S. at 304. When a statute "implicates rights protected by the First Amendment," a "challenger may raise a facial challenge . . . even if the statute is not vague as applied to that challenger's conduct." *Requena*, 980 F.3d at 39. In such circumstances, the challenger must demonstrate a "substantial chilling effect on protected conduct." *Farrell v. Burke*, 449 F.3d 470, 497 (2d Cir. 2006) (declining to contemplate facial challenge where regulation was not vague as applied and there was "no danger of chilling sufficient to allow a facial challenge to go forward"); *accord Hulinsky v. Cnty. of Westchester*, No. 22 Civ. 6950, 2025 WL 2318705, at *4 (S.D.N.Y. Aug. 12, 2025).

Defendant cannot raise a facial challenge because she has not demonstrated that the statute imposes a "substantial chilling effect on protected conduct." *Farrell*, 449 F.3d at 497. FARA does not bar any activity, including First Amendment-protected activity. Instead, the statute requires registration only to the extent a person acts in service of a foreign principal. *See* 22 U.S.C. § 612(a) ("No person shall act as an agent of a foreign principal unless he has filed with the Attorney General a true and complete registration statement."). *Meese v. Keene* is instructive. 481 U.S. at 480. There, the Court upheld the constitutionality of a provision in a former iteration of FARA requiring that foreign "political propaganda" be labeled as such, although the Court explicitly did not pass on "[t]he constitutionality of" FARA's "registration, filing, and disclosure requirements." *Id.* at 467-69. The Court held that the statute did not implicate the First Amendment because the labeling requirement "place[d] no burden on protected expression." *Id.* at 480. "Congress did not prohibit, edit, or restrain the distribution of

16

advocacy materials" -- Congress simply required that such materials be labeled as political propaganda. *Id.* at 480.

So too here. Contrary to Defendant's argument, FARA does not bar her or anyone else from "research[ing], dialogu[ing], and associat[ing] with others in her field and area of specialty," or "advocat[ing] for her own independently-chosen policy positions." FARA requires her to register as an agent of a foreign principal when such conduct involves taking a statutorily specified action in the scope of an agency relationship with or otherwise at the request of a foreign principal. *See United States v. Michel*, No. 19 Crim. 148, 2022 WL 4182342, at *5 (rejecting overbreadth challenge because "FARA . . . regulate[s], and regulate[s] only, notification to the Attorney General"); *Sun*, 2025 WL 1296456, at *10 (rejecting constitutional challenge because the indictment charged the defendant "with acting as an agent for a foreign principal without registering with the Attorney General," as opposed to engaging in "political and policy activities" standing alone); *cf. Farhane*, 634 F.3d at 137 (stating that material support for terrorism statute did "not evidence overbreadth" where statute did not prohibit "independent advocacy" or "mere . . . association," and primarily covered conduct that "most often does not take the form of speech at all"). Defendant therefore cannot raise a facial challenge without first showing that the statute does not clearly apply to her own conduct, which she has not done.

### 3. Facial Challenge - Merits

To the extent FARA sufficiently chills First Amendment-protected conduct to justify a facial challenge at this stage, as Defendant and amici argue, the facial challenge fails on the merits. Defendant does not identify any language that is so vague as to "fail[] to define the unlawful conduct with sufficient definiteness that ordinary people can understand what conduct is prohibited, or . . . make[] the law unacceptably vulnerable to arbitrary enforcement."

*Requena*, 980 F.3d at 39.

### a.    "Agent of a Foreign Principal"

Defendant argues that FARA's provision allowing prosecution for failure to register as an "agent of a foreign principal" is unconstitutionally vague.  FARA defines "agent of a foreign principal" as any person who meets two requirements: (1) "acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, *request, or under the direction* or control, of a foreign principal" and (2) takes specified actions, including engaging in "*political activities*" and acting as a "*political consultant*."  22 U.S.C. § 611(c)(1) (emphasis added).  Defendant challenges parts of both requirements -- acting at the "request, or under the direction of" a foreign principal, and engaging in "political activities" and acting as a "political consultant."  22 U.S.C. § 611(c)(1) ("request, or under the direction"), § 611(o) ("political activities"), § 611(p) ("political consultant").  These terms as used in § 611 are not unconstitutionally vague.

### i.    "Request" and "Under the Direction Of"

The definitional terms "request" and "under the direction of" do not render the statutory definition of "agent of a foreign principal" unconstitutionally vague.  "Request" is a common term with a well-understood definition, meaning "the act or an instance of asking for something." Request, Merriam-Webster's Collegiate Dictionary (12th ed. 2026).  The same is true for "direct," which means, inter alia, "[t]o cause (something or someone) to move on a particular course . . . [t]o instruct (someone) with authority."  Direct, Black's Law Dictionary (12th ed. 2024); *see also* Direction, Merriam-Webster's Collegiate Dictionary (12th ed. 2026) ("[G]uidance or supervision of action or conduct").

Judicial interpretation of the statute further mitigates Defendant's vagueness concerns.

*See Skilling*, 561 U.S. at 412 (holding that statute is not vague in part because judicial interpretation clarified scope).  In a civil enforcement action, the Second Circuit clarified the circumstances in which a person acts at the "request" of a foreign principal, stating that "it is important to ascertain whether those requested to act were identified with specificity by the principal" and "[a]lso relevant is the specificity of the action requested."  *INAC*, 668 F.2d at 161. Defendant does not demonstrate that the terms "request" and "direction" are so vague such that they do not give notice of the proscribed conduct or encourage arbitrary enforcement.

Defendant argues that *INAC*, which states that "[t]he exact perimeters of a 'request' under the Act are difficult to locate," demonstrates that the term "request" is vague.  *Id.* at 161.  This argument is unpersuasive because "the possibility that it will sometimes be difficult to determine whether the incriminating fact . . . has been proved" does not render a statute vague.  *Copeland*, 893 F.3d at 114 (quoting *Williams*, 553 U.S. at 306).  Here, the Indictment alleges conduct clearly taken "at the direction" or "request" of a foreign principal -- for instance, that an ROK official informed Defendant that the ROK "wanted to have an intimate roundtable" including former U.S. government officials, which Defendant then organized, and that Defendant also arranged a happy hour for congressional staff that was funded by the NIS.

### ii.  "Political Activities"

Similarly, the definition of "political activities" is not unconstitutionally vague.  FARA defines "political activities" as:

> any activity that the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party.

22 U.S.C. § 611(o).  The definition first narrows the relevant activities to those about which a

person has a particular belief or intent. Second, that state of mind must be aimed at influencing identified entities or persons. Finally, the definition identifies the subjects of intended influence. Each of these inquiries poses a clearly defined factual question that provides fair notice of the proscribed conduct and standards for application that prevent arbitrary enforcement. The state of mind requirement further cuts against a finding of vagueness; by requiring that a person have the intent to influence specified subjects within the United States, the statute limits the possibility that a person will be held liable without notice that they were engaged in political activities. *See Humanitarian L. Project*, 561 U.S. at 21 (stating that knowledge requirement in statute "reduces any potential for vagueness"); *Copeland* 893 F.3d at 121 ("[A] scienter requirement may mitigate a law's vagueness."). The definition of "political activities" is not facially void for vagueness.

### iii.    "Political Consultant"

The definition of "political consultant" also is not unconstitutionally vague. FARA defines the term as a person "who engages in informing or advising any other person with reference to the domestic or foreign policies of the United States or the political or public interest, policies, or relations of a foreign country or of a foreign political party." 22 U.S.C. § 611(p). The definition narrows the universe of persons to anyone who informs or advises about any of three subjects: (1) U.S. domestic or foreign policy; (2) the political or public interest, policies, or relations of a foreign country or (3) the political or public interest, policies, or relations of a foreign political party. *See id.* Both the type of conduct and subject of the conduct present clear factual questions that provide fair notice of the charged conduct and protect against arbitrary enforcement.

Because none of the terms that Defendant identifies is unconstitutionally vague, FARA's

definition of "agent of a foreign principal," including the definitional language "at

the . . . request, or under the direction . . . of" and sub-definitions of "political activities" and

"political consultant," is not facially void for vagueness.

### b.  "Not Serving Predominantly a Foreign Interest"

Defendant also argues that the statutory exemption for persons engaged only in activities

"not serving predominantly a foreign interest" is unconstitutionally vague.  *See* 22 U.S.C.

§ 613(d)(2).  Defendant argues that her own case, in which each of the activities alleged in the

Indictment could be understood to serve her personal or professional goals, highlights the

vagueness inherent in this exemption.

This argument fails because juries may constitutionally apply "terms of degree," such as

'predominantly' in § 613(d)(2), in determining whether a defendant is criminally liable.

*Humanitarian L. Project*, 561 U.S. at 23 (holding that material support for terrorism statute is not

unconstitutionally vague despite statutory definitions of elements referencing "terms of degree"

like "specific, general, and specialized"); *see Requena*, 980 F.3d at 42 (holding that proscription

on sale of substances "substantially similar" to a listed controlled substance is not

unconstitutionally vague).  The application of this exemption will depend on the facts of any

given case, but the exemption itself is not unconstitutionally vague because the statute provides a

clear factual standard for what activities are exempted: activities "not serving predominantly a

foreign interest."  Consequently, this exemption does not prevent the otherwise clear statute from

providing fair notice of the proscribed conduct, nor does the exemption create the threat of

arbitrary enforcement.

### c. Other Vagueness Arguments

Defendant's remaining vagueness arguments lack merit.  Defendant argues that the

Department of Justice has "effectively concede[ed]" that the statute is unconstitutionally vague

in a notice of proposed rulemaking.  *See* Amending and Clarifying Foreign Agents Registration

Act Regulations, 90 Fed. Reg. 40, 42 (Jan. 2, 2025) (to be codified at 28 C.F.R. pt. 5) (stating

that existence of agency relationship is a "fact-intensive exercise," and that "persons who are

unclear as to the applicability of the Act can seek and receive definitive guidance as to whether

they have a registration obligation" in a request for advisory opinion pursuant to 28 C.F.R.

§ 5.2).  This argument fails because the statutory language is not vague, and the presence (or

absence) of regulatory guidance does not make clear statutory text facially vague.  *See United

States v. Shin*, No. 19 Crim 552, 2022 WL 3274120, at *6 (S.D.N.Y. Aug. 11, 2022) (stating that

vagueness challenge to statute depends on the "statutes of conviction," not regulatory guidance

interpreting statute).

Defendant, echoed by amici, also argues that criminal prosecution for FARA violations

creates the risk of politicized and arbitrary enforcement, including enforcement targeted at

protected speech.  This argument is unpersuasive because, as described above, the statute

provides clear, fact-based standards for what conduct requires registration.  Other safeguards

such as the requirement of proof beyond a reasonable doubt and the availability of as-applied

constitutional challenges are more tailored doctrines that may prevent politicized enforcement in

individual cases.  *See, e.g.*, *Williams*, 553 U.S. at 305 (emphasizing "the requirement of proof

beyond a reasonable doubt" in upholding a statute against a vagueness challenge); *Humanitarian

L. Project*, 561 U.S. at 24-25 (declining to invalidate statute based on application to facts not

before the court despite statutory nexus to First Amendment).

### 4. As-Applied Challenge

Defendant also argues that criminal enforcement of FARA's registration requirements for "political consultants" and agents engaged in "political activities" is unconstitutionally vague as applied to her. District courts in this Circuit frequently defer as-applied challenges until after trial because an as-applied challenge depends on the facts of the defendant's conduct. *See, e.g.*, *United States v. Peraire-Bueno*, No. 24 Crim. 293, 2025 WL 2062021, at *6 (S.D.N.Y. July 23, 2025); *United States v. Phillips*, 690 F. Supp. 3d 268, 293 (S.D.N.Y. 2023). Deferral is particularly appropriate here as Defendant disputes the truth of many allegations in the Indictment. *See Eisenberg*, 2023 WL 8720295, at *7 (deferring as-applied challenge where government and defendant took "divergent views on what [the defendant's] conduct was"). Defendant's as-applied challenge is denied as premature without prejudice to renewal after full factual development at trial.

### C. Duplicity

Defendant argues that each count of the Indictment is duplicitous. Defendant's arguments fail at this stage because a reasonable jury could conclude that each count alleges only a single violation of law.

### 1. Duplicity Legal Standard

"An indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count . . . and 2) the defendant is prejudiced thereby." *United States v. Kandic*, 134 F.4th 92, 99 (2d Cir. 2025). An indictment that charges two or more distinct crimes in a single count is duplicitous; an indictment is impermissibly duplicitous only if that duplicity results in prejudice. *Id.* at 99. "[A]cts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single

continuing scheme." *United States v. Vilar*, 729 F.3d 62, 79 (2d Cir. 2013); *United States v. Gilmore*, No. 24 Crim. 127, 2024 WL 3990604, at *2 (S.D.N.Y. Aug. 29, 2024). Even if an indictment is not duplicitous on its face, duplicity may be revisited after development of the full evidentiary record. *See United States v. Walsh*, 194 F.3d 37, 46 (2d Cir. 1999).

### 2. FARA Substantive Charge

Count Two of the indictment is not duplicitous because Defendant's alleged conduct could be characterized as part of a single continuing scheme to violate FARA.

Defendant argues that the Indictment impermissibly conflates three separate FARA registration violations based on three distinct periods of allegedly registrable activity; the three periods are separated by two approximately 18-month intervening periods of inactivity. She asserts that she is prejudiced as a result because the Government has accomplished an end-run around the five-year statute of limitations, which she maintains began to run at the end of each of the three periods of activity. The Government argues that the Indictment does not charge multiple offenses in a single count because the FARA statute of limitations begins to run when a defendant registers under FARA, which Defendant never did. This dispute does not need to be resolved on the present motion because the Indictment permissibly charges Defendant's conduct in a single count.

The conduct alleged in the Indictment "could be characterized" as single, continuing violation of FARA. *Vilar*, 729 F.3d at 79. The Indictment alleges that Defendant was an agent of the ROK "[f]or more than a decade," from at least 2013 to June 2023. Defendant's argument regarding the purported gaps in the Indictment fails because a reasonable jury could conclude that Defendant's agency status continued even during those periods when she was not actively engaged with third parties on behalf of the ROK, particularly given that her alleged agency

24

activity continued after those purported gaps.  *Cf. United States v. Estevez*, 961 F.3d 519, 529 (2d

Cir. 2020) (holding indictment charging unlawful possession of firearm over a six-day period not

duplicitous when "[t]here was no indication . . . that [the defendant] lost possession of the gun"

over period).  Count Two of the Indictment is therefore not duplicitous.

To the extent that Defendant argues that the portions of the Indictment relating to conduct

preceding July 2019 should be dismissed, that argument fails because, based on the allegations in

the Indictment, a reasonable jury could conclude that Defendant's agency status terminated only

in June 2023.  *See Sampson*, 898 F.3d at 285 (reversing dismissal of indictment on statute of

limitations grounds where reasonable jury could find that prosecution was not time-barred).

### 3.  Conspiracy Charge

Count One of the Indictment is not duplicitous because a reasonable jury could conclude

that a single conspiracy existed, whose members included Defendant, representatives of the ROK

NIS and representatives of the ROK MFA.  "Whether the government has proved a single

conspiracy or has instead proved multiple other independent conspiracies is a question of fact for

a properly instructed jury."  *United States v. Aracri*, 968 F.2d 1512, 1519 (2d Cir. 1992); *accord*

*United States v. Alexander*, No. 24 Crim. 676, 2025 WL 3154981, at *9 (S.D.N.Y. Nov. 11,

2025).  The Indictment alleges that Defendant conspired with others to act as an agent of the

ROK government.  A reasonable jury could conclude that the referenced NIS and MFA

personnel -- all of whom the Indictment alleges to be ROK representatives -- were part of that

conspiracy.  Count One of the Indictment is not duplicitous on its face.  Defendant's duplicity

challenge to Count One also fails because she fails to argue that any prejudice would result from

the Indictment's charging the conduct as a single conspiracy rather than multiple conspiracies.

## IV.    CONCLUSION

For the reasons above, Defendant's motion to dismiss the Indictment is denied.  The

motion of the Reporters Committee and the motion of the Knight Institute and ACLU for leave

to file memoranda of law as amici curiae are granted, and the memoranda are deemed filed.

The Clerk of Court is respectfully directed to terminate the motions at docket numbers 45

and 48.

Dated:  February 18, 2026
       New York, New York

                                        LORNA G. SCHOFIELD
                                 UNITED STATES DISTRICT JUDGE

26